UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| MICHAEL LEE SAMANIEGO, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 6:09-CV-101-C |
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. |
| | ) | 6:07-CR-054-C |
| Respondent. | ) | |

**PROPOSED FINDINGS OF FACT AND RECOMMENDATION**

At issue is a motion Petitioner Michael Lee Samaniego brought pursuant to 28 U.S.C. § 2255. The district court denied Samaniego's motion, and the United States Court of Appeals for the Fifth Circuit remanded for further development on a single issue: whether Samaniego was denied effective assistance of counsel by his trial counsel's failure to file a motion to suppress a confession he gave on March 3, 2007. On this issue, the undersigned recommends that the district court reject Samaniego's assertions and find that he was not denied effective assistance of counsel.

A.      **Procedural History**

The circumstances that culminated in Samaniego's sentence are set forth in detail in the district court's order denying Samaniego's § 2255 motion and the remand order from the United States Court of Appeals for the Fifth Circuit. In summary, on December 19, 2007, pursuant to a plea agreement, Samaniego pleaded guilty to two counts of drug activity connected to incidents that led to his arrests in San Angelo, Texas, on January 25, 2007, and March 3, 2007. The first count charged possession with intent to distribute methamphetamine. The second count charged possession with intent to distribute less than 50 kilograms of marijuana. Pursuant to a presentence investigation report (PSR), which recommended a sentencing guideline range based in large part on

information obtained in the confession Samaniego gave on March 3, 2007, the district court sentenced Samaniego to 300 months in prison.

Samaniego filed a direct appeal to the United States Court of Appeals for the Fifth Circuit but was unsuccessful. Thereafter, on December 10, 2009, he filed the § 2255 motion at issue seeking to vacate his criminal sentence on a number of grounds, including his assertion that he received ineffective assistance of counsel. In regard to this claim, Samaniego argued that his confession was involuntary, coerced, and given while he was sleep deprived and mentally impaired by substances; the officers involved in obtaining his confession denied his request to speak with counsel; the officers fabricated statements; his confession formed the basis of the charges against him and enhancements in the PSR; he asked his counsel to file a motion to suppress the statements he gave in the confession; his counsel did not file a motion to suppress; and, had his counsel filed a motion to suppress, he would have gone to trial and obtained a more favorable outcome.

The district court denied Samaniego's motion without a hearing, and Samaniego appealed. The Court of Appeals granted a certificate of appealability (COA) on a single issue related to Samaniego's assertion that he was denied effective legal assistance because of his counsel's failure to file a motion to suppress his confession. Specifically, the court granted a COA on the issue of whether the district court erred in determining that Samaniego was not denied effective assistance of counsel in regard to the motion to suppress his confession, given Samaniego's sworn assertions in his § 2255 motion and in the absence of evidence in the record that would explain why counsel did not file a motion. The court ultimately concluded that the record was not developed enough to evaluate the issue, vacated the district court's judgment, and remanded the case for an evidentiary hearing on the issue.

The district judge thereafter referred the matter to the undersigned for the limited purpose of conducting an evidentiary hearing and filing proposed findings of fact and a recommendation. The undersigned held a hearing on September 19, 2013, and both Samaniego and his trial counsel testified under oath. Based on testimony and evidence provided at the hearing, the undersigned submits this Proposed Findings of Fact and Recommendation.

**B.    Issue**

Whether Samaniego was denied effective assistance of counsel by virtue of his counsel's failure to file a motion to suppress the confession Samaniego gave on March 3, 2007. Subsumed in this issue is whether Samaniego's confession was coerced and whether Samaniego was prejudiced as a result of his counsel's failure to file a motion to suppress.

**C.    Summary of Testimony and Evidence**

Samaniego testified about events that followed his arrests on January 25, 2007, and March 3, 2007. In regard to the first arrest, Samaniego testified that he invoked the rights set forth under *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), by asking for an attorney and that officers respected his request and did not attempt to question him. In regard to the arrest on March 3, 2007, Samaniego testified that he initially invoked *Miranda* rights at the scene of the arrest and told officers that he did not want to talk with them and that they respected his wishes. He also testified, however, that when he was alone with the officers in the patrol car, he told them that he wanted to "take responsibility" and talk with them.

According to Samaniego, he was then routed to the San Angelo Police Department where he waited in a control room for one and one-half hours. He claimed that his thoughts were racing during this time and that he changed his mind about talking with the officers while he waited. He

3

testified that he told two of the three officers who would later form part of the interrogation team that he did not want to talk. Samaniego claimed that the officers became frustrated and that one of the officers raised his voice and told him that he had wasted their time. He testified that he told them that he nonetheless wanted to speak with a lawyer and that they then said things that made him feel threatened. He specifically claimed that the officers told him that things "could involve your family" and that his situation could become worse if he did not speak with them. Samaniego made the same claims in his § 2255 motion: he specifically claimed that the officers told him that they would place his two young children in state custody if he did not agree to speak with him. When questioned by his counsel at the hearing, however, Samaniego testified that he was "not sure" whether the officers told him that they would place his children in state custody if he did not speak with them; however, he claimed that they indicated as much. When questioned by counsel for the government, Samaniego admitted that none of the officers threatened to place his children in state custody if he did not speak with them.

In regard to whether he knowingly waived his *Miranda* rights, Samaniego testified that he was functioning on a sleep deficit on the day of the arrest and confession: he testified that he had been taking methamphetamine for months and was a "heavy user"; generally slept an average of one and one-half hours per night; and slept only one hour the prior night. He also testified that he told the officers that he took methamphetamine before the arrest, and he contended that they knew that he was impaired from methamphetamine. He claimed that he thereafter told the officers that he had not slept, did not want to talk, and wanted to speak with a lawyer.

Despite the foregoing assertions, Samaniego spoke with the officers, and the conversation is documented on a video recording that was admitted as Exhibits 1a and 1b. The video shows one

of the officers giving Samaniego a piece of paper that Samaniego looked at while the officer recited the *Miranda* warning. Samaniego agreed that one of the officers read the *Miranda* warning to him and gave him a card with the text of the warning. He agreed that he appears to read along with the officer on the video, but he contended that he only listened to the officer and did not actually read the text on the card.

The video, in fact, shows Samaniego looking at the card while one of the officers reads the *Miranda* warning. It also shows Samaniego signing a piece of paper without hesitation after the warning was read. The paper Samaniego signed included text consisting of a *Miranda* acknowledgment and waiver; and a copy of the paper with Samaniego's signature was admitted as Exhibit 2 at the hearing with no objections. Samaniego nonetheless testified that he was coerced into signing the paper, and he specifically testified that he told the officers that he wanted a lawyer to look at the paper before he signed it. His testimony is contradicted by his actions as recorded in the video. At no time did Samaniego ask for a lawyer.

The video shows Samaniego thereafter answering the officers' questions about his and others' drug trafficking activity, and he does not at any time appear to be under duress. He appears to understand the officers' questions, and answers their questions in a coherent and assured manner. At no time does he appear to be anxious, nervous, hyperactive, or overly animated. Nor does he appear disoriented, lethargic, or fearful. He is coherent, alert, and appropriately responsive. His speech is clear and directed, his manner is appropriate, and he speaks with confidence.

Samaniego admitted at the hearing that he fully understood the meaning of waiving his *Miranda* rights and what would happen if he waived his rights and spoke with the officers. Samaniego also testified that he verbally agreed to talk with the three officers, that one of the officers

5

urged him to tell the truth, and that one of the officers typed a summary of what he told them. He testified that he gave inaccurate information to the officers and specifically claimed that he fabricated information and exaggerated his involvement in drug trafficking because he believed it would help him.

When questioned at the hearing about asking his counsel to file a motion to suppress, Samaniego testified that he asked his counsel to file the motion after he read the PSR, which was after he signed the plea agreement. Samaniego believed that his confession should have been suppressed because of the false information he gave to the officers: he testified that he told counsel that he wanted the confession suppressed because he lied during the questioning and fabricated some of his statements. In regard to his guilty plea, he claimed that he signed the plea agreement despite his protests to enhancements, which were based on statements in his confession that established his involvement as an organizer and importer in the local drug trade. He further claimed that he signed the agreement out of convenience in hopes that counsel would negotiate with the government regarding the enhancements. Samaniego repeatedly contended that he never agreed to the substance of the plea agreement. On the other hand, he agreed that the plea agreement set the maximum sentence at 25-years imprisonment and that a 25-year sentence was less than what he would face if he were to proceed to trial.

Samaniego's trial counsel provided testimony that contradicted the testimony Samaniego gave regarding the confession and the issue of suppression. According to counsel, Samaniego never told him that his *Miranda* rights were violated on March 3, 2007, or that he provided his confession under duress. Counsel testified that he was unaware of the issues Samaniego asserts regarding his confession until Samaniego filed the § 2255 motion.

In regard to the plea agreement, Samaniego's counsel testified that even if Samaniego would have asked him to file a motion to suppress his confession, he would have advised that Samaniego continue with the plea agreement and avoid trial.  Counsel testified that he believed that the plea agreement was the best option for Samaniego because Samaniego faced a maximum sentence of life in prison without the possibility of parole if he proceeded to trial, whereas his sentence was capped at a prison term of 25 years if he proceeded with the agreement.

Counsel further testified that evidence other than that obtained in the confession would have supported the two counts of drug trafficking, including statements from others and drug activity unrelated to the two arrests in 2007.  In sum, counsel maintained throughout his testimony that even if suppression were at issue, his advice would not have changed: he believed that there was substantial benefit to Samaniego from accepting the plea agreement.

The remaining relevant testimony concerns the sentencing hearing.  Samaniego testified that he told the district judge under oath that he agreed to the plea agreement.  He also testified that his counsel gave him a script that he followed during the sentencing hearing to ensure that he answered the judge's questions correctly.  Samaniego testified that he worried that he might stumble over his words; he claimed that he feared a mistake on his part would result in the district judge ordering him to trial.  Significantly, he testified that he was afraid to proceed to trial.

**D.    Findings of Fact**

Based on the testimony and evidence presented at the hearing, the undersigned finds as follows:

**1.    Samaniego knowingly waived his *Miranda* rights on March 3, 2007.**

The video recording, coupled with Samaniego's testimony, demonstrates that Samaniego knowingly waived his *Miranda* rights.  Samaniego testified that he invoked *Miranda* rights at the

scene of the arrests on January 25, 2007, and March 3, 2007, and officers respected his rights and did not force him to speak on either occasion. Samaniego's testimony shows that he understood the meaning of a *Miranda* warning and knew from experience that he could refuse to talk on March 3, 2007, and that the officers would not question him or force him to talk with them if he invoked his rights. His testimony also shows that he understood the consequences of "waiving *Miranda* rights" and specifically understood that what he said could be used against him in criminal proceedings. Although Samaniego initially invoked *Miranda* rights on March 3, 2007, his testimony and the video recording demonstrate that he later changed his mind and agreed to talk with the officers.

The video belies the claim Samaniego set forth his § 2255 motion that he informed officers that he did not understand the nature of the acknowledgment/waiver he signed before the interrogation. The footage shows that Samaniego willingly signed the acknowledgment/waiver and did not tell the officers that he did not understand the statements on the paper or otherwise object to signing the paper. Nor did he ask for a lawyer before he signed it. The video, coupled with Samaniego's testimony about invoking *Miranda* rights prior to reaching the police station, shows that Samaniego understood his *Miranda* rights and knowingly waived them at the San Angelo Police Station.

**2.    Samaniego's confession was not coerced.**

Samaniego voluntarily provided officers with information on March 3, 2007; no part of his confession was coerced. Contrary to Samaniego's contentions, the officers did not threaten him. Although Samaniego claimed in his § 2255 motion that the officers threatened to have his two young children placed in state custody if he did not sign the *Miranda* waiver and speak with them, his testimony contradicts this claim. He admitted under questioning that none of the officers made such

a statement. Further, contrary to Samaniego's claims in his § 2255 motion, the officers did not promise him leniency in return for his confession. Finally, the video shows that Samaniego willingly answered the officers' questions and, contrary to his contentions, Samaniego was not incapacitated by methamphetamine or sleep deprivation.

**3.     Samaniego is not credible.**

Evidence from the hearing, including Samaniego's testimony, contradicts claims he made in his § 2255 motion and calls into question his credibility. For example, as noted above, Samaniego claimed that officers threatened to place his children in state custody if he did not speak with them, but he admitted at the hearing that they did not make such threats. Further, the video recording belies Samaniego's claim that drug use and sleep deprivation compromised his confession. At all times during the video, one sees Samaniego acting in a coherent and reasoned manner. Samaniego's claim that officers fabricated statements is also contradicted by the evidence. The video shows Samaniego himself making the statements that formed the basis of the terms in the plea agreement. In addition, Samaniego testified that he, himself, fabricated statements during the confession and exaggerated his involvement in drug trafficking activity because he thought it would help his cause. In sum, Samaniego has not provided any evidence that would support his claim that he told counsel that his *Miranda* rights were violated or that his confession was otherwise involuntary, coerced, or given at a time when he was mentally impaired.

**4.     Samaniego's counsel did not provide ineffective assistance of counsel.**

Even if the court were to assume, *arguendo*, that Samaniego told counsel that his *Miranda* rights were violated on March 3, 2007, a failure on counsel's part to file a motion to suppress Samaniego's confession would not require the court to find that Samaniego was denied effective

assistance of counsel. In order to demonstrate that counsel provided ineffective legal assistance, the habeas petitioner must demonstrate by a preponderance of the evidence that counsel acted outside the range of reasonable professional judgment and that his case was prejudiced as a result. *Washington v. Strickland*, 466 U.S. 668, 687, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Samaniego has not done so.

In regard to the first requirement, Samaniego's counsel did not act outside the range of reasonable professional judgment. In fact, filing a motion to suppress would have been futile, and failing to file a futile motion "does not cause counsel's performance to fall below an objective level of reasonableness." *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (citing *Scones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995)). Filing a motion to suppress would have been futile on two grounds. First, as noted above, Samaniego claimed at the hearing that he wanted counsel to file a motion to suppress because he fabricated statements during the confession. Samaniego may have fabricated statements in a misguided attempt to improve his standing in his criminal case; however, no one coerced him to speak with the officers on March 3, 2007, and Samaniego has not claimed that the officers coerced him into providing fabricated or inflated confessions that day. The video recording, which would have been admitted at a suppression hearing, shows that Samaniego knowingly and voluntarily waived his *Miranda* rights and was not coerced into providing any of the information he gave to the officers on March 3, 2007. Had counsel pursued suppression of Samaniego's confession, the motion would have been denied.

Second, Samaniego testified that he asked counsel to file a motion to suppress after he read the PSR, which was after he entered his plea of guilty. Filing a motion to suppress after Samaniego pleaded guilty would have been futile because "once a guilty plea has been entered, all

nonjurisdictional defects in the proceedings are waived," except those that relate to the voluntariness of the guilty plea. *United States v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008) (citation and internal quotations omitted). Thus, when Samaniego pleaded guilty, he waived the right to enter a protest in his case on any grounds other than ineffective assistance of counsel as it may have related to the voluntariness of his plea. *Id.* In regard to the voluntariness of the plea, as the district court found in the order denying Samaniego's § 2255 motion, Samaniego's plea was voluntary and was not tainted by ineffective assistance of counsel. This finding is supported by the evidence which shows that Samaniego and his counsel discussed his options and determined that the plea agreement was the best option. A guilty plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *United States v. Juarez*, 672 F.3d 381, 385–86 (5th Cir. 2012).

Given the evidence and testimony offered at the hearing, filing a motion to suppress would have been futile, and Samaniego has not overcome the presumption that his counsel's decisions were not sound trial strategy. *See Strickland*, 466 U.S. at 689 (acknowledging that there is a "strong presumption" that counsel's decisions fall within the "wide range of reasonable professional experience" and noting the petitioner's burden of overcoming the presumption). Nor has Samaniego shown prejudice. In order to establish prejudice, Samaniego must show that there is a reasonable probability that, but for counsel's failure to file a motion to suppress, he would have insisted on proceeding to trial rather than pleading guilty. *See Cavitt*, 550 F.3d at 441 (acknowledging that a petitioner shows prejudice when he shows that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). Samaniego has not made this showing. To the contrary, his testimony belies his claim that he would

11

have proceeded to trial. He testified that he knew that he faced a sentence of life imprisonment if he proceeded to trial and that he feared making a mistake at the sentencing hearing because a mistake might result in the district court ordering a trial. Further, counsel's testimony and the evidence demonstrates that the plea agreement was beneficial to Samaniego and spared him the possibility of a term of life imprisonment that he would have faced at trial.

**E.     Recommendation**

Samaniego has failed to prove by a preponderance of the evidence that he was denied effective assistance of counsel. "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. The court must be guided by a strong presumption that trial counsel rendered adequate assistance and that counsel's decisions in regard to the challenged conduct was the product of reasoned trial strategy. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). Based on the testimony and evidence, the undersigned recommends that the district court find that Samaniego knowingly and voluntarily waived his *Miranda* rights on March 3, 2007, understood the meaning of waiving his *Miranda* rights, and was not coerced into giving his confession nor was he incapacitated. The undersigned further recommends that the district court conclude that counsel employed sound trial strategy and rendered adequate legal assistance in the criminal proceedings against Samaniego and that Samaniego's claim of ineffective assistance of counsel is without merit.

**F.     Right to Object**

A copy of this Findings of Fact and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings of Fact and Recommendation must file specific written objections within fourteen days after being served with

a copy. *See* 28 U.S.C. § 636(b)(1) (2013); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the Findings of Fact and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: December 31, 2013

NANCY M. KOENIG
United States Magistrate Judge